IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---------------------------------------------------- :
UNITED STATES OF AMERICA : CASE NO. 5:07 CR 038
:
Plaintiff, :
:
-vs- : ORDER DENYING GOVERNMENT'S
: MOTION *IN LIMINE*
MARC LAMARCA, :
:
Defendant. :
---------------------------------------------------- :
:
:
:

UNITED STATES DISTRICT JUDGE LESLEY WELLS

The United States of America indicted Mr. Marc LaMarca, Vice-President and Chief Executive Officer of the Charmayne and Vogue Beauty Academies, on 17 January 2007. (Doc. #1). The indictment charges the Defendant with failure to make refunds of federal student aid monies in violation of Title 20 U.S.C. § 1097, false statements in violation of Title 18 U.S.C. § 1001, and mail fraud in violation of 18 U.S.C. § 1341. Id.

On 29 April 2008, the government filed a motion *in Limine* to preclude evidence of alleged monies due to the Defendant's schools from the government as reimbursement for expenses which arose after Defendant's failure to make refunds to the government for students not entitled to Pell grants, and other matters. (Doc. #34). The government asserts that by the time the Department of Education placed the

Defendant on reimbursement basis, the Defendant completed the offense of failure to make refund payments, and it is no defense that the government may have owed Mr. LaMarca reimbursements after the offense was completed. Id.

On 9 May 2008, the Defendant filed a response to the government's motion *in Limine*. (Doc. # 40). The Defendant asserts the government and the Defendant were in negotiations about which party owed money to the other. The government's documents indicate that the reimbursement money owed to the schools would be offset from the liability of the beauty academies. Id. In addition, the Defendant asserts that evidence of the schools change to credit hours from clock hours is critical for the Defendant's defense. Id.

On 14 May 2008 the government filed a reply to Defendant's response to the government's motion *in Limine*. (Doc. #45). The government argues the charge of failing to make refund payment of Pell monies under 20 U.S.C. § 1097(a) requires only a showing the Defendant knew refunds of Title IV funds were owing and willfully failed to make such payments. Id. Thus, evidence showing the government owed the Defendant money is irrelevant to the charge. Id. Further, the government alleges evidence of the beauty schools' switch from clock hours to credit hours is irrelevant because the Defendant hopes to show the government had bad motives, which is not relevant to any defense of the criminal charges. Id.

The Defendant filed a second response to the government's motion *in Limine* on 25 August 2008. (Doc. #64). Mr. LaMarca contends the government is attempting to preclude evidence relevant to the essential element of mental state, which the prosecution bears the burden of proving. Id.

2

On 28 August 2008, the government filed a reply to the Defendant's second response. (Doc. #65). In the reply the government reiterates its previous arguments and claims evidence that the government allegedly owed money to the school could result in jury confusion and create a mini trial, within the trial. Id.

I.     **Background.**

On 17 January 2007 the government indicted Mr. Marc LaMarca for the offenses of false statements, mail fraud, and failure to refund department of education funds. (Doc. #1).

A.     <u>The Pell Grant Program.</u>

The Vogue and Charmayne beauty schools were established in the 1960's as privately owned proprietary schools offering diplomas in Basic Cosmetology and Cosmetology Management. (Doc. #1). The Vogue school was approved to participate in the Title IV Pell Grant program in 1975, and the Charmayne school was approved to participate in 1989. Title IV of the Higher Education Act, as amended, 20 U.S.C. §§ 1070-1099 ("Title IV"), established need-based federally funded student financial aid programs for college and post-secondary vocational training. Id. The Pell Grant program authorized under Title IV-A § 411 of the Higher Education Act is administered by the United States Department of Education and provides federal funds to eligible post-secondary students in financial need. Id. The post-secondary institutions act as disbursement agents for the Department of Education. Id. Pell Grants are credited to the student's account and applied against tuition costs. Id. Before the institutions can disburse funds to students, the students must complete a requisite number of clock or credit hours of instruction for each pay period. Id.

When students are awarded Pell grants, the school holds the Pell grant in trust for the Department of Education. (Doc #1). When the students are enrolled, the school can withdraw the funds from the trust account and deposit the funds into the operating account for tuition. Id. The schools must document the students' attendance, properly calculate refunds for the students who drop out or withdraw from school, and promptly refund the amount to the Department of Education. Id.

The Vogue and Charmayne schools entered into the Program Participation Agreement with the Department of Education in which they agreed to comply with the laws and regulations pertaining to Title IV programs. The laws and regulations required the schools to have an annual independent audit of the school's compliance with the laws and regulations. Id. In addition, the regulations require the schools to refund unearned portions of Pell grants to the federal trust fund within thirty days of a student dropping out or withdrawing from the program. Id.

B.   Mr. Mark LaMarca's actions.

Mr. Thomas LaMarca, Defendant Marc LaMarca's father, was the primary owner and served as the chief operating officer of the Vogue and Charmayne schools until the mid 1990's. Id. Ms. Anne Kaufman was a minority owner of the schools and she worked part-time at the schools. Ms. Kaufman was responsible for tracking student hours, making reports of student hours to the Ohio State Board of Cosmetology, and maintaining records of the Pell grant funds received and the refunds owed. (Doc. #1).

In 1998 Mr. Thomas LaMarca hired Mr. James Rumm as the schools' Financial Aid Director. In April of 2000, Mr. Thomas LaMarca, hired his son Mr. Marc LaMarca to assist Mr. Rumm in the operation of the schools. Mr. Rumm left the schools at the end

4

of May 2000. From approximately April 2000 to November 2003, when the schools closed, the Defendant, Marc LaMarca, served as the Vice President and Chief Executive Officer of Beauty Enterprises, Inc. Id.

In 1998 the schools entered a financial crisis. The schools determined the Department of Education owed the schools an amount in excess of six-hundred-thousand dollars ($600,000). (Doc. #40). According to the Defendant, the schools and the Department of Education engaged in lengthy discussions regarding the amount of money owed by each party. The United States Department of Education sent a letter to the schools on 25 April 2001, stating 222 of the 299 students at the Vogue Beauty Academy did not receive their Pell Grants from 1998. (Doc. #64). In another letter dated 22 January 2004 the Department of Education states "[w]ith respect to the larger matter of funds due to/due from the schools, a final determination shall be made by FSA after a resolution of the audits and program review report." Id.

In June of 2003, the Department of Education determined Defendant LaMarca was not refunding Pell grant funds and placed Defendant LaMarca on a "Reimbursement Program." (Doc.#34). Under the reimbursement program, the schools could not obtain federal Pell funds until the schools incurred expenses for educating eligible students. The government alleges that beginning on or about 29 June 2000, and continuing through on or about 1 July 2003, Defendant LaMarca knowingly and willfully failed to refund federal Pell grant money for students who did not complete their course of study or were not eligible for Pell grants.

II.    **Law and Analysis.**

The charge of failing to make refunds of Pell grant monies, pursuant to Title 20 U.S.C. § 1097(a) requires a showing that the Defendant knew the refunds of Title IV funds were owing and the Defendant willfully failed to make such refunds. (Doc. #45). The government's motion *in Limine* requests this court to exclude evidence that the Department of Education allegedly owed money to the Defendant after the period in which Defendant's failure to make refunds occurred and to exclude evidence of the schools switching from clock hours to credit hours for the 2003-2004 school year.

The Defendant argues, evidence that the Department of Education owed the schools money and evidence that the Department of Education and the Defendant were in discussions about who owed money to whom is relevant to the issue of whether the Defendant "knowingly and willfully" failed to make refund payments. In addition, either student credit hours or clock hours are a prerequisite to Pell grant eligibility, and Defendant asserts that his change to credit hours is critical to his defense.

Federal Rule of Evidence 401 provides "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Thus the standard for relevant evidence favors admissibility. The Defendant asserts he was negotiating with the Department of Education to determine the amount each party owed and how to offset the amount of money owed by the two parties. These facts are relevant to whether it is less probable that the Defendant acted knowingly and willfully. Moreover, Defendant's switch from clock hours to credit hours is a factor in determining student Pell grant eligibility, and Defendant asserts that the

6

change is critical to his defense. Such evidence is relevant pursuant to Fed. R. Evid. 401.

The government also alleges that evidence of the money owed to the schools might cause jury confusion and create a mini-trial within the trial. (Doc. #65). Federal Rule of Evidence 403 provides:

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The government has not shown that any risks of the challenged evidence substantially outweigh its probative value. The risks of jury confusion and undue delay do not substantially outweigh the relevance of evidence of the schools' switch from clock hours to credit hours. Moreover, evidence that the Defendant believed the Department of Education owed him money and that therefore he did not owe money to the Department of Education, is highly probative of the material issue of whether the Defendant acted knowingly and willfully. Further, the risks of jury confusion and undue delay are slight. Thus, Fed. R. Evid. 403 does not bar admission of evidence of the schools' switch from clock hours to credit hours nor does it bar evidence, if any, that the Department of Education owed money to the Defendant.

### III. Conclusion

The government has not shown that evidence of alleged monies the Department of Education owed to the Defendant is inadmissible under the Federal Rules of Evidence, nor has the government shown that evidence of the schools' switch from

clock to credit hours should be excluded. As such, evidence of the alleged monies owed to the Defendant and the schools' adjustment from clock hours to credit hours are admissible. For the foregoing reasons, the government's motion *in Limine* is denied.

IT IS SO ORDERED.

/s/ Lesley Wells
UNITED STATES DISTRICT JUDGE